**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. MASON, individually and on behalf of all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>NATURE'S INNOVATION, INC., a Georgia Corporation (also known as Naturasil, formerly known as Trask Research Inc.),<br><br>Defendant. | Case No.:  '12CV3019 BTM DHB<br>CLASS ACTION<br><br>**COMPLAINT FOR:**<br>1) **VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750,** *et seq.***;**<br><br>2) **VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***;**<br><br>3) **VIOLATION OF THE FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500,** *et seq.***;**<br><br>4) **BREACH OF EXPRESS WARRANTY;**<br><br>5) **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY;**<br><br>6) **VIOLATION OF MAGNUSON-MOSS ACT, 15 U.S.C. § 2301,** *et. seq.***;**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiff, on behalf of himself, all others similarly situated, and the general public ("Plaintiff"), alleges against Defendant Nature's Innovation, Inc. (also known as Naturasil, formerly known as Trask Research Inc. and Dermisil; collectively, "Defendant") as follows:

2.     Defendant is the manufacturer and seller of homeopathic products that are nothing more than placebos, as set forth herein.  This complaint concerns Defendant's homeopathic products known under the brand name Naturasil, including the products: Skin Tags, Molluscum, Warts, and Nail Fungus (collectively referred to herein as the "Products").

**JURISDICTION AND VENUE**

3.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the class are citizens of states different than Defendant.   This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Further, greater than two-thirds of the class members reside in states other than the state in which Defendant is a citizen.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because Defendant (i) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its Products in this district; (ii) does substantial business in this district; (iii) advertises to consumers residing in this district, and (iv) is subject to personal jurisdiction in this district.

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

**THE PARTIES**

5.      Plaintiff Robert A. Mason is a resident of San Jacinto, California.

6.      Defendant Nature's Innovations, Inc. is a Georgia corporation that owns the Naturasil product line of homeopathic remedies, which were previously sold under the product line, Dermisil.

7.      Defendant markets, distributes, sells, and advertises homeopathic Products throughout the State of California.

**INTRODUCTION**

8.      Homeopathic medicine has been practiced in United States since the early 19th century.  Homeopathy seeks to stimulate the body's ability to heal itself by giving very small doses of highly diluted substances.  However, there is little evidence that homeopathy is effective, much less that people understand homeopathic principles.[1]

9.      Homeopathy is premised on two main principles; the principle of similars and the principle of dilutions.  Under the "principle of similars" a disease can be cured by a substance that produces similar symptoms in healthy people.    Under the "principle of dilutions" the *lower* the dose of the medication, the *greater* its effectiveness.[2]

10.      However, it is paradoxical that through dilution an ingredient would reach higher potency.  Further, in highly diluted remedies, there is a very low probability that even a single molecule of the original substance is present in the Product.  For example, a level of 12C dilution is the equivalent to a pinch of salt in both the North

---

[1]  *See* http://nccam.nih.gov/sites/nccam.nih.gov/files/homeopathy.pdf, last visited on Dec. 19, 2012.

[2]  *See* http://nccam.nih.gov/sites/nccam.nih.gov/files/homeopathy.pdf, last visited on Dec. 19, 2012.

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

and South Atlantic Oceans.[3]   Allegedly, the more diluted the ingredient, the more effective it becomes.

11.   Homeopathic remedies are not marketed and sold in the United States in the same manner as when they first originated, approximately 200 years ago.  When homeopathic drugs first originated, people would typically consult with a licensed homeopathic practitioner, who would compound his or her own homeopathic remedy, or provide a prescription to the patient.  Food and Drug Administration Compliance Policy Guide ("CPG") § 400.400.  Historically, homeopathic drugs were not labeled and there was no direct-to-consumer advertising.  Instead, homeopathic remedies were primarily marketed to licensed homeopathic practitioners.  "CPG" § 400.400.

12.   Now, increasing numbers of homeopathic drugs are sold, not in their own section of retail drug stores, but alongside other over-the-counter ("OTC") non-homeopathic drugs that bear FDA-approved labels or monographs.

## FACTS

13.   Defendant manufactures homeopathic treatments for various skin conditions.  Five different formulations (of active and inactive ingredients) comprise thirteen of Defendant's Products.

14.   This means that Defendant is selling the same products under different names, often for different prices, by simply slapping different labels on the bottles.

15.   Defendant suggests buying other products along with its homeopathic liquid products, such as dietary supplements or soaps to "speed the healing process."  Defendant offers combinations of these products in "starter-packs" or "bundles."

/ / /

/ / /

/ / /

---

[3] *See* http://www.healthguidance.org/entry/12178/1/An-Introduction-to-Homeopathic-Remedies.html, last visited on Dec. 19, 2012.

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

1

**A.  Naturasil Skin Tags[4]**

2

3

4

5



6

7

8

9

10

11    16.    During the Class Period defined herein, Plaintiff purchased Naturasil Skin

12 Tag Remover from a CVS store in San Jacinto, California.  His individual purchases

13 ranged from approximately $39.95 for Skin Tag Remover; Skin Tags, which is simply

14 the larger size of Skin Tag Remover, sells online is $39.95 for 15 ml, $89.95 for 30 ml

15 and $149.75 for 50 ml (collectively, "Skin Tags").

16    17.    Skin Tags is composed of nothing more than a malodorous blend of castor

17 seed oil, tea tree oil, and cedar leaf oil into which minute quantities of the purported

18 active ingredient have been mixed.  Skin Tags thus contains no active ingredients, and

19 has no effect on skin tag removal.  *Thuja Occidentalis 6X* is purported to be the active

20 ingredient in Skin Tags, but is not present in the liquids that are sold to consumers,

21 who are unwittingly spending tens of millions of dollars each year on worthless

22 "doses" of Skin Tags.

23    18.    In purchasing Skin Tags, Plaintiff relied upon various representations

24 Defendant made on the Product's label, as listed herein and in Exhibit 1, such as the

25 name of the Product itself, the claim that Skin Tags is guaranteed to remove his skin

26

27

_____

[4] *See* Exhibit 1 ("Ex. 1") attached hereto for larger images of Skin Tags and other
Product labels.

28

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

tags and the Product contained exclusive botanical ingredients. Plaintiff also purchased Skin Tags because he wanted a more natural alternative to traditional OTC remedies.

19. Defendant advertises Skin Tags as "100% Natural," "Pure," and "a FDA Registered Homeopathic Medicine," using a photograph of a smiling woman with soft unblemished skin. Ex. 1 and Ex. 2 (Web Site screenshots).

20. Defendant's claims are false and misleading, among other reasons, because even pharmaceutical grade castor seed oil is processed with hexane, a dangerous and synthetic neurotoxin, and is therefore not "100% Natural." Ex. 1. Indeed, Thujone (a major component of thuja oil) is banned as a food or drink additive in the United States. Defendant markets the Product with its "Natural" claims with the goal of deceiving consumers into believing the Product is superior to and as effective as OTC allopathic skin tag treatments, all of which claims are false or deceptive.

21. Further, the phrase "FDA Registered" is misleading to the average consumer because the Product is listed as an unapproved homeopathic drug with the FDA and Defendant is required to register with the FDA to sell its Products, as are all other drug manufacturers. The average purchaser would not know what "FDA Registered" means, and accordingly Defendant is implying a higher degree of FDA sanction than that which is actually present for the Products. Ex 2.

22. Defendant also claims that Skin Tags will cause a person's "skin tag [to] dry and flake away over a 3-6 week period," and that the Product "*offers guaranteed removal without pain, scarring, or harsh treatments … using exclusive plant extracts that create an all-natural, homeopathic solution and very appealing treatment option."* Ex. 2. Skin Tags' package also depicts a photograph of a smiling woman holding her clasped hands to her face. Ex. 1.

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

23.   Defendant's claims are false and misleading because Skin Tags does not cause human skin to dry and flake away over a 3-6 week period.  Further, the Product does not contain "exclusive" ingredients but the same ingredients as many of Defendant's other Products.  In fact, Thuja is nothing more than Cedar Leaf Oil. Thus, Thuja is not exclusive to Defendant's business, but a well-known oil used in many products, including shoe polish, furniture polish, and pest repellant.  Indeed, Thuja can be harsh to skin and is a known skin irritant.  Therefore, Defendant's claim that Skin Tags contains an "exclusive plant extract[]" is false and misleading.

24.   Even if Skin Tags contained any discernible amount of Thuja in it, this active ingredient is not effective at removing skin tags.  According to the American Cancer Society, "[a]vailable scientific evidence does not support claims that thuja or its extract is safe or effective."

25.   During the class period defined herein, under its Dermasil brand line, Defendant marketed Skin Tags as "proven to remove all strains of skin tags including cutaneous papilloma using exclusive plant extracts."  Ex. 2.  In marketing Dermasil for Skin Tags, Defendant claimed it engaged in "years of research on homeopathic skin tag treatments" to develop "an exclusive formula not found in any other product." *Id.*  Defendant also claimed that Skin Tags was "proven highly effective in combating all types of skin tags and the virus that causes them."  *Id.*  In fact, Dermasil for Skin Tags is identical to Skin Tags under its Naturasil brand name and therefore not "exclusive", and is further not "proven" to remove all types of skin tags and the virus that causes them.  *See id.*

26.   To the detriment of Plaintiff and similarly situated consumers, the substance listed as the "active ingredient" in Skin Tags, *Thuja Occidentalis 6X*, even if it were effective at removing skin tags within a 3-6 week period, is not present in the Product.  Because of the enormous dilutions used in Product's preparation, the

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

"active ingredient" is not actually present in the Skin Tags preparations sold to the Plaintiff and other consumers.

27.    The ingredients used in Skin Tags provide no health benefit.  Moreover, at the stupendously high dilutions used to prepare the product, they can have no effect of any kind in humans because the odds are astronomically high that even a single molecule derived from the original "extract" of the "active ingredients" could be present in the solution which constitutes the product sold to consumers.[5]

28.    Defendant knows that there is **no active ingredient** present in Skin Tags and therefore must be aware that Skin Tags cannot relieve any symptoms for which Defendant advertises the Product.

29.    Defendant indicates that consumers must apply the Product three times a day for at least three weeks to see results.  Plaintiff and other consumers that have diligently followed these directions have failed to see any results.

30.    Skin Tags comes in 15, 30 and 50 milliliter bottle sizes and the price depends on the bottle size, starting at approximately $39.95 per 15 milliliter bottle.

31.    Due to the directions requiring consumers apply the Product three times a day, one bottle may not be enough to start seeing results.  Hence, Defendant's unfair and deceptive practices have enriched them by tens of millions of dollars, at the expense of tens of thousands of Americans.

32.    Further, Defendant markets its Skin Tag Products in the over-the-counter ("OTC") aisle of retail chain drug stores next to other, allopathic, FDA-monograph approved OTC drugs, thus enhancing consumer confusion as to the true nature of the Products.

---

[5] The final stage in the preparation of Skin Tags is the infusion of what is essentially water onto the surface of tiny balls of sugar.  This effectuates an additional "dilution" of the water, imposing another layer of uncertainty upon the indeterminate but undeniably vast dilution in Defendant's Products.

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

33. Skin Tags did not work for Plaintiff as advertised.

34. Absent the misstatements described herein, which were and are material to the average consumer, Plaintiff and the class would not have purchased Skin Tags.

35. Further, Plaintiff purchased the Product instead of competing products based on the false statements and misrepresentations described herein.

36. Instead of receiving a product that relieves symptoms as advertised, Plaintiff received a product worth much less, or which was worthless, since the Products not only do not work but cause no effect or effects reverse of that advertised.

37. Plaintiff lost money as a result of Defendant's deception in that Plaintiff did not receive what they had paid for.

38. Plaintiff altered his position to his detriment and suffered damages in an amount equal to the amount he paid for the Products.

39. Plaintiff seeks justice for himself and for similarly-situated consumers of Skin Tags by means of this action, among other things, to enjoin the ongoing deceptive practices described herein.

///
///
///
///
///
///
///
///
///
///
///
///

## B. Products Containing the Same Ingredients as Skin Tags

### a. Naturasil Molluscum ("Molluscum")

40.    In addition to Skin Tags, Defendant manufactures, advertises and sells Products that contain identical ingredients to Skin Tags, proving that Skin Tags is not an exclusive plant extract remedy.

41.    For example, Defendant advertises Molluscum as a natural remedy for molluscum contagiosum, a viral skin infection.   Defendant claims this Product contains "exclusive plant extracts" and that the Product is "All Natural," "proven to relieve all strains of molluscum contagiosum." Exs.1 and 2.

42.    But the active and inactive ingredients of Molluscum are exactly the same as those in Naturasil Warts (discussed below) and Skin Tags (discussed above), even though the website says that it uses "uses exclusive plant extracts without the pain, scarring or harsh treatments found in many traditional methods." Ex. 2. The "active ingredient" in Molluscum is *Thuja Occidentalis 6X. See* Ex. 1.

///

///

///

///

///

9

**b. Naturasil Warts ("Warts")**



43.    Defendant advertises Warts as a "Natural Wart Removal," that is "guaranteed to eliminate warts without pain, scarring, or harsh treatments found in many traditional methods by using exclusive plant extracts." Exs. 1 and 2.

44.    The active and inactive ingredients of Warts are exactly the same as those in Molluscum and Skin Tags, even though the website says that it uses "exclusive plant extracts." *See* Ex. 2.

45.    To the detriment of Plaintiff and similarly situated consumers, the much-hyped, exclusive substance listed as the "active ingredient" in Warts (the same active and inactive ingredients as Skin Tags and Molluscum) is *Thuja Occidentalis 6X*. *See* Ex. 1.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

    **c.**    **Naturasil Nail Fungus ("Nail Fungus")**

3

4

5

6

7

8

9



10    46.   Defendant represents Nail Fungus as "a proven nail fungus treatment."

11 Defendant claims that the Product is "effective to use for all nail infections, including

12 onychomycosis, candida, and paronychia, without harsh internal chemical treatments

13 found in many traditional methods." Ex. 2.

14    47.   The purported active ingredient in this Product, as with Skin Tags and the

15 other Products listed above, includes *Thuja Occidentalis 6X*, even though the website

16 says that Skin Tags uses "exclusive plant extracts," to the detriment of Plaintiff and

17 similarly situated consumers. Exs. 1 and 2.

18                  **SPECIFIC MISREPRESENTATIONS,**

19    **MATERIAL OMISSIONS, AND DECEPTIVE FACTS**

20        **(As to All Causes of Action Against all Defendant)**

21    48.   Defendant's advertising of their skin ailment Products are and have been

22 the subject of an extensive and comprehensive, nationwide marketing campaign in

23 various media including the internet.

24    49.   Defendant primarily advertises and promotes the Products through

25 information on Naturasil's website and packaging claims. Among other things, the

26 Products' names clearly state what the ailments and symptoms the Products are

27 designated for. For example Skin Tags is for skin tags and Warts is for warts,

28

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

providing a clear representation to consumers that the Product is designed to alleviate the symptoms identified in the name.

50.    In addition to the misrepresentations and omissions listed by Product above, Defendant also represents on its web site that "Naturasil homeopathic medicines are registered with the FDA and are manufactured in FDA registered facilities in the USA."  Ex. 2.  But Defendant <u>must</u> register its Products with the FDA, as would any seller of homeopathic or prescription drugs.  And, Skin Tags and Defendant's other skin ailment Products are registered as "unapproved homeopathic" drugs, which Defendant does not inform consumers.[6]  A reasonable consumer, unskilled in the terms of art relevant to the FDCA would equate FDA registration with the FDA approval of non-homeopathic drugs.  These omissions were material to the average consumer and Defendant had a duty to disclose the full truth in light of its partial representation or complete omission of relevant facts, as detailed herein.

51.    Defendant also claims that "each Naturasil product has been researched meticulously," and that the Products are "proven to" be effective.  Ex. 2.  These claims are false and deceptive because Skin Tags and the other Products noted above are not clinically proven to be effective under relevant federal agency standards. Further, the Products are all copies of each other, belying the exclusivity of the formulas and the meticulous research that Defendant claims to have performed prior to marketing them.

52.    Also, Defendant does not explain to consumers what the extreme dilution levels of X, C, K and similar dilution levels mean, in a language understandable to an average consumer.  Given that Defendant's Products are composed of basically inactive ingredients due to extreme dilution levels, the Products essentially contain no active ingredients.  And, the Products did not alleviate the conditions or symptoms for

---

[6]see for example: http://dailymed.nlm.nih.gov/dailymed/archives/fdaDrugInfo.cfm?archiveid=66784

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

1  which Plaintiff purchased them.

2      53.   Further, by aiming to market and sell the Products next to allopathic OTC

3  drugs in retail chain drug stores that bear FDA-approved labels, Defendant adds to

4  consumer confusion over the level of FDA approval of the Products.

5      54.   Defendant is also free to indicate uses without any regulatory oversight, a

6  fact that is not disclosed to consumers.  The lack of regulatory oversight is hidden

7  behind Defendant's claims that the medicines are "registered by the FDA."

8      55.   Defendant's advertising claims are additionally misleading in that many of

9  the products are touted to be made of an "exclusive formula which is not found in any

10  other products," but though many of the Products are made of the same exact formula.

## CLASS ACTION ALLEGATIONS

**A.    The Nationwide Consumer Class**

56.   Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil

Procedure, Plaintiff bring this action on behalf of himself and a California consumer

class (hereinafter referred to as the "Class") initially defined as follows:

- All purchasers of Defendant's Skin Tags Products from December 19,
  2008 to the present (the "Class Period") in California.  Excluded from the
  California consumer class are governmental entities, Defendant, any
  entity in which Defendant has a controlling interest, their employees,
  officers, directors, legal representatives, heirs, successors and wholly or
  partly owned subsidiaries or affiliated companies, class counsel and their
  employees; and the judicial officers and their immediate family members
  and associated court staff assigned to this case.

57.   The proposed Class is so numerous that individual joinder of all its

members is impracticable.  Due to the nature of the trade and commerce involved,

however, Plaintiff believes the total number of Class members is at least in the

hundreds of thousands and members of the Class are numerous and geographically dispersed across the California.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

58.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and incidental monetary relief as to the Products appropriate with respect to the Class as a whole.  In particular, Defendant has failed to disclose the true nature of the Products being marketed and that the Products are nothing more than a placebo.

59.   There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiff and the Class and these common questions of fact and law include, but are not limited to, the following:

    a.  Whether Defendant had adequate substantiation for its claims about its Skin Tags Products before making them;

    b.  Whether the claims discussed above are true, misleading, or reasonably likely to deceive;

    c.  Whether Defendant's alleged conduct violates public policy;

    d.  Whether the alleged conduct constitutes violations of the laws asserted herein;

    e.  Whether Defendant engaged in false or misleading advertising;

    f.  Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss for restitution purposes;

    g.  Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

60.   Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning the homeopathic Products and purchased the Products based on those representations.

61.   Plaintiff will fairly and adequately represent and protect the interests of the Class.   Plaintiff has retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including for homeopathic drugs, in particular.   Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

62.   Plaintiff and the members of the Class suffered, and will continue to suffer harm as a result of the Defendant's unlawful and wrongful conduct.   A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.   Individual joinder of all members of the Class is impracticable.   Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.   Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.   The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.   The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.   Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

63.   Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

***California Civil Code §§ 1750, et seq.***

**(By Plaintiff and on Behalf of the Class as Against Defendant)**

64.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

65.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "Act").  Plaintiff and the members of the Class are consumers as defined by California Civil Code § 1761(d). The Products are goods within the meaning of the Act.

66.   Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

- Representing that [the Products have] … characteristics … uses [or] benefits … which [they do] not have …  (Civ. Code, § 1770, subd. (a) (5).)

- Representing that [the Product] is of a particular standard, quality or grade… if it is of another.  (Civ. Code, § 1770, subd. (a) (7).)

- Advertising a good… with intent not to sell it as advertised.  (Civ. Code, § 1770, subd. (a) (9).)

- Representing that [the Product has] been supplied in accordance with a previous representation when [it has] not.  (Civ. Code, § 1770, subd. (a) (16).)

67.    Defendant violated the Act by representing through advertising of the Products as described above, when it knew, or should have known, that the representations and advertisements were false or misleading.

68.    Plaintiff and members of the Class reasonably relied upon the Defendant's representations as to the quality and attributes of their Products.

69.    Plaintiff and other members of the Class were deceived by Defendant's representations about the quality and attributes of their Products, including but not limited to the purported benefits of their Products, taken as a whole, that their Products, *inter alia*, are "proven to" treat, eliminate or reduce skin tags and the virus that causes them, contain "exclusive" ingredients not found in any other product, are "FDA registered," and "100% Natural."  Plaintiff and other Class members would not have purchased the Products had they known the Defendant's claims were untrue, and had they known the true nature of the Products.

70.    Pursuant to section 1782 *et seq*. of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to Skin Tags and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant's wrongful business practices regarding its Products constituted, and constitute, a continuing course of conduct in violation of the California's Consumers Legal Remedies Act since Defendant is still representing that these Products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.  A copy of Plaintiff's letter is attached as Ex. 3 hereto.

71.   Although Plaintiff does not currently seek damages for his CLRA claim, if Defendant refuses to rectify its violation, Plaintiff may amend his compliant to seek damages.

### SECOND CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW

*California Business and Professions Code §§ 17200, et seq.*

**(By Plaintiff and on Behalf of the Class as Against Defendant)**

72.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

73.   California's Unfair Competition Law, Business and Professions Code § 17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."   For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising in violation of the UCL.

74.   The UCL also prohibits any "unlawful… business act or practice." Defendant has violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and by violating among others, California Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, California Health and Safety Code §§ 109875, *et seq.* ("Sherman Law"), Cal. Bus. & Prof. Code §§ 12601, *et seq.* ("Fair Packaging and Labeling Act"), California Commercial Code § 2313(1), and the common law.  Such conduct is ongoing and continues to this date.

75.   Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

76.   California Business and Professions Code § 17200 also prohibits any "unfair"… business act or practice."

77.   Defendant's   acts,   omissions,   misrepresentations,   practices   and nondisclosures as alleged herein also constitute "unfair" business acts and practices

within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Such conduct is ongoing and continues to this date.

78.   Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California resulting in harm to consumers.  Plaintiff asserts violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

79.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

80.   The UCL also prohibits any "fraudulent business act or practice."

81.   Defendant's claims, nondisclosures (i.e., omissions), and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of the UCL.  Such conduct is ongoing and continues to this date.

82.   Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other members of the Class.  Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct.

83.   Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff to injunctive relief against Defendant, as set forth in the Prayer for Relief.

84.   Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

85.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE FALSE ADVERTISING LAW

***California Business and Professions Code §§ 17500, et seq.***

**(By Plaintiff and on Behalf of the Class as Against Defendant)**

86.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

87.   Plaintiff has standing to pursue this claim as Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Skin Tag Products in reliance upon Defendant's marketing claims.  Plaintiff used the Products as directed, but the Products have not worked as advertised, nor provided any of the promised benefits.

88.   Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code §§ 17500, *et seq.* because Defendant advertised their Products in a manner that is untrue or misleading, or that is known to Defendant to be untrue or misleading.

89.   Defendant's wrongful business practices have caused injury to Plaintiff and the Class.

90.   Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

91.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of Defendant's Products, which were unjustly acquired through acts of unlawful, unfair, deceptive and/or fraudulent competition.

### FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(On Behalf of Plaintiff and all Class Members, as Against Defendant)**

92.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

93.   On the Skin Tag Products' labels and through their marketing campaign as described above, Defendant made affirmations of fact or promises, or description of goods, which formed "part of the basis of the bargain" at the time of purchase.  *See* Exs. 1 & 2.

94.   The warranties were breached because the Products did not live up to their warranties, and that breach caused injury in the form of the lost purchase price for the Products.  *See* Cal. Com. Code § 2313(1); *see also Zwart v. Hewlett-Packard Co.*, 2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can create warranties).

95.   As a result of Defendant's breach of their warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Products they purchased.

### FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of Plaintiff and the Class, as Against Defendant)**

96.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

97.   Defendant, through their acts and omissions as set forth herein, in their sale, marketing and promotion of the Products, made representations to Plaintiff and

the Class that the Products provide the claimed health benefits, among other representations. *See* Exs. 1 & 2.

98.    Plaintiff and the Class bought the Products manufactured, advertised and sold by Defendant.

99.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable.

100.   However, Defendant breached that warranty implied in the sale of goods in that the Products do not provide the purported claimed health benefits, as set forth in detail herein.

101.   As a result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

102.   Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE MAGNUSSON-MOSS ACT,

**15 U.S.C. §§ 2301, *et. seq*.;**
**(On Behalf of Plaintiff and the Class, as Against Defendant)**

103.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

104.   Plaintiff brings this claim individually and on behalf of the members of the Class.  Plaintiff brings this claim under state warranty law, and individually under the Act, as described below.

105.   Defendant's Products are consumer products as defined in 15 U.S.C. § 2301(1).

*Mason v. Nature's Innovation, Inc.*
CLASS ACTION COMPLAINT

106.  Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

107.  Defendant are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

108.  In connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the Products offer relief from various ailments and symptoms as listed herein and Exs. 1 & 2, when in fact, these Products do not provide relief for any of these ailments or symptoms.

109.  By breaching the express written warranties stating that the Products relieve ailments and symptoms as listed herein and Exs. 1 & 2, Defendant has violated the statutory rights of Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., thereby damaging Plaintiff and Class members.

110.  Plaintiff notified the Defendant in writing of his claims and that he was acting on behalf of a Class.  *See* Ex. 3.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself, all others similarly situated and the general public, prays for judgment against Defendant as to each and every cause of action, including:

A.    An order declaring this action to be a proper Class Action and requiring Defendant to bear the costs of Class notice;

B.    An order awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

D.    An order awarding restitution and disgorgement of Defendant's revenues from the Products to Plaintiff and the proposed Class members pursuant to their UCL and FAL claims;

23

1    E.    An order compelling Defendant to engage in a corrective advertising
2          campaign to inform the public concerning the true nature of their
3          Products;
4    F.    An order awarding attorneys' fees and costs to Plaintiff;
5    G.    An award of damages to Plaintiff and the class pursuant their
6          warranty claims;
7    H.    An order providing for all other such equitable relief as may be just
8          and proper.

9                                    **JURY DEMAND**

10   Plaintiff hereby demands a trial by jury on all issues so triable.

11

12   Dated:  December 19, 2012              */s/ Ronald A. Marron*
13                                          By: Ronald A. Marron
                                            *ron@consumersadvocates.com*
14                                          **LAW OFFICES OF RONALD A.**
                                            **MARRON, APLC**
15                                          RONALD A. MARRON
                                            SKYE RESENDES
16                                          ALEXIS M. WOOD
17                                          3636 4th Avenue, Suite 202
18                                          San Diego, California 92103
                                            Telephone: (619) 696-9006
19                                          Facsimile: (619) 564-6665

20

21

22

23

24

25

26

27

28
                                        24