1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | ROBERT A. MASON, individually and on        Case No. 12cv3019 BTM(DHB)
   | behalf of all others similarly situated and
12 | the general public,                         **ORDER GRANTING IN PART AND**
   |                                             **DENYING IN PART MOTION TO**
13 |                               Plaintiff,    **DISMISS**

14 |         v.

15 | NATURE'S INNOVATION, INC., a
   | Georgia Corporation (also known as
16 | Naturasil, formerly known as Trask
   | Research Inc.),

17 |                               Defendant.

18

19        Defendant Nature's Innovation, Inc., has filed a motion to dismiss certain claims in

20 Plaintiff's Complaint.  For the reasons discussed below, Defendant's motion is **GRANTED**

21 **IN PART** and **DENIED IN PART**.

22

23                          **I.  BACKGROUND**

24        On December 19, 2012, Plaintiff Robert A. Mason commenced this action.  Plaintiff

25 alleges that during the "Class Period" (December 19, 2008 to the present), he purchased

26 Naturasil skin tag remover based on representations on the product label and Defendant's

27 website that the product was an exclusive and 100% natural formula that was FDA

28 registered and was proven to gently and effectively remove skin tags. (Compl. ¶¶ 16, 18-22.)

1  Plaintiff alleges that Defendant also sold the identical product under its Dermisil brand line
2  and made the same marketing representations in connection with the Dermisil for Skin Tags
3  product.  (Compl. ¶ 25.)
4       Plaintiff alleges that Defendant's representations regarding its skin tag product were
5  false and misleading because (1) the product was not 100% natural (Compl. ¶ 20); (2) the
6  term "FDA Registered" is misleading because the product is listed as an *unapproved*
7  homeopathic drug with the FDA, and the confusion is enhanced by the marketing of the
8  product next to other allopathic, FDA-monograph approved over-the-counter drugs (Compl.
9  ¶¶ 21, 32); (3) the product is not effective at removing skin tags because the active
10 ingredient it allegedly contains, Thuja, is not effective at removing skin tags, and the active
11 ingredient is not even actually present in the product due to the enormous dilution of the
12 product (Compl. ¶¶ 24, 26-28); and (4) the product did not contain "exclusive" ingredients
13 because the exact same ingredients were used in many of Defendant's other products such
14 Naturasil Molluscum, Naturasil Warts, and Naturasil Nail Fungus (Compl. ¶¶ 40-47.)
15      Plaintiff seeks to bring this action on behalf of himself and a California consumer class
16 defined as: "All purchasers of Defendant's Skin Tags Products from December 19, 2008 to
17 the present (the "Class Period") in California."
18      Plaintiff's Complaint asserts the following causes of action: (1) violation of the
19 Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA") (2) violation of
20 the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); (3) violation
21 of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"); (4) breach
22 of express warranty; (5) breach of implied warranty of merchantability; and (6) violation of
23 Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et. seq. ("MMWA").
24
25                                  **II.  STANDARD**
26      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted
27 only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to
28 support a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th

1 Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's

2 complaint are taken as true and construed in the light most favorable to the plaintiff. See

3 Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although

4 detailed factual allegations are not required, factual allegations "must be enough to raise a

5 right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555

6 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires

7 more than labels and conclusions, and a formulaic recitation of the elements of a cause of

8 action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more

9 than the mere possibility of misconduct, the complaint has alleged - but it has not show[n]

10 that the pleader is entitled to relief." Ashcroft v. Iqbal, 565 U.S. 662, 679 (2009) (internal

11 quotation marks omitted). Only a complaint that states a plausible claim for relief will survive

12 a motion to dismiss. Id.

13

14 ### III. DISCUSSION

15 Defendant moves to dismiss Plaintiff's claims for injunctive relief in connection with

16 his CLRA, UCL, and FAL claims, and also moves to dismiss Plaintiff's claims for violation of

17 the CLRA, breach of the implied warranty of merchantability, and violation of the MMWA.

18 As discussed below, the Court grants Defendant's motion to dismiss as to the claims for

19 injunctive relief as well as the CLRA claim, but denies the motion as to the breach of implied

20 warranty and MMWA claims.

21

22 A. Article III Standing to Assert a Claim for Injunctive Relief

23 Defendant argues that Plaintiff has not satisfied his burden of establishing Article III

24 standing with respective to injunctive relief because Plaintiff has not shown that he will likely

25 be harmed again by Defendant's actions. According to Defendant, there is no likelihood that

26 Plaintiff will purchase Defendant's skin tag removal product in the future because, according

27 to Plaintiff, it does not work. Therefore, there is no risk of future harm and no basis for

28 injunctive relief. The Court agrees.

1    Plaintiff bears the burden of showing that the Article III standing requirements are met.

2  D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1036 (9th Cir. 2008).  In a

3  class action, if none of the named plaintiffs establishes the existence of a case or

4  controversy with the defendants, none may seek relief on behalf of himself or any other

5  member of the class.  O'Shea v. Littleton, 414 U.S. 488, 494 (1974).

6    To establish that he has standing, Plaintiff must show that (1) he suffered an injury

7  in fact; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is "likely"

8  to be "redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-

9  61 (1992).  To establish standing for prospective injunctive relief, Plaintiff must demonstrate

10  that "he has suffered or is threatened with a 'concrete and particularized' legal harm . . .

11  coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'"  Bates

12  v. United Parcel Service, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (quoting City of Los Angeles

13  v. Lyons, 461 U.S. 95, 111 (1983)).  Plaintiff must establish a "real and immediate threat of

14  repeated injury."  Bates, 511 F.3d at 985.  Although past wrongs are evidence relevant to

15  whether there is a real and immediate threat of repeated injury, past wrongs do not in and

16  of themselves amount to a real and immediate threat of injury sufficient to make out a case

17  or controversy.  Id.

18    District courts in this circuit are split over the issue of whether a plaintiff, who is

19  seeking to enjoin a seller or manufacturer from making false or misleading

20  misrepresentations about an item the plaintiff previously purchased, must be able to

21  establish that he would likely purchase the item again to establish standing.  In Delarosa v.

22  Boiron, Inc., the Central District held that the named plaintiff lacked Article III standing to

23  seek injunctive relief in connection with her CLRA and UCL claims because she testified that

24  Coldcalm, the product at issue, "doesn't work," and she did not dispute that she did not

25  intend to purchase Coldcalm in the future.  (Order Granting in Part Def.'s Mot. for Summ. J.

26  at 8:13-19, 10cv1569 JST (CWx) (C.D. Cal. Dec. 28, 2012), ECF No. 303).  The court

27  reasoned that because the plaintiff did not demonstrate a sufficient likelihood that she will

28  again be wronged in a similar way, there was no threat of future injury that could be

1   redressed by injunctive relief.  Id. at 8:18-22.

2          Similarly, in Wang v. OCZ Tech. Group, Inc., 276 F.R.D. 618 (N.D. Cal. 2011), the

3   court held that Wang had failed to establish standing to seek injunctive relief against the

4   seller, who allegedly engaged in deceptive advertising regarding the capacity and

5   performance of certain models of solid state drives ("SSD"s).  The court explained that Wang

6   had failed to demonstrate the likelihood of future harm because Wang had already

7   purchased his SSD, had already paid an inflated price for the product based on the seller's

8   alleged misrepresentations, and did not allege even a likelihood that he would once again

9   purchase an SSD at issue from the seller.  Id. at 627. [1]

10         In contrast, in Henderson v. Gruma Corp., 2011 WL 1362188 (C.D. Cal. Apr. 11,

11  2011), the court rejected the defendant's argument that the plaintiffs did not have standing

12  to sue for injunctive relief because they were now informed about the ingredients in the

13  defendant's products (guacamole and spicy bean dip) and asserted that they would not

14  purchase the products in the future.  The court reasoned:

15         If the Court were to construe Article III standing for FAL and UCL claims as
           narrowly as the Defendant advocates, federal courts would be precluded from
16         enjoining false advertising under California consumer protection laws because
           a plaintiff who had been injured would always be deemed to avoid the cause
17         of the injury thereafter ("once bitten, twice shy") and would never have Article
           III standing. . . .
18                 While Plaintiffs may not purchase the same Gruma products as they
           purchased during the class period, because they are now aware of the true
19         content of the products, to prevent them from bringing suit on behalf of a class
           in federal court would surely thwart the objective of California's consumer
20         protection laws.

21
    Id. at * 7-8.
22

23  _____

24         [1] In a footnote, the court indicated that the analysis in Meyer v. Sprint Spectrum L.P.,
    45 Cal. 4th 634, 646 (2009) (interpreting the CLRA as allowing consumers to enjoin unlawful
25  practices on the public's behalf) might assist Wang's efforts to obtain injunctive relief if Wang
    successfully amended his CLRA claims.  Wang, 276 F.R.D. at 627 n. 54.  However, even
26  if the CLRA, UCL, and/or FAL allow a plaintiff to seek injunctive relief on behalf of the public
    regardless of whether the plaintiff is likely to suffer future harm himself, as a federal court,
27  this Court must make sure that the threshold requirements imposed by Article III are
    satisfied.  See Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) ("It goes without saying that
28  those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold
    requirement imposed by Article III of the Constitution by alleging an actual case or
    controversy.")

1        Similarly, in Koehler v. Litehouse, Inc., 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012),

2   the court concluded that the plaintiff had standing to sue for injunctive relief even though he

3   admitted that he did not intend to make another purchase of the product in question ("Bleu

4   Cheese Yogurt Dressing with Probiotics") because the product did not "boost immunity" as

5   advertised.    Following Henderson, the court reasoned that to hold otherwise would

6   "eviscerate the intent of the California legislature in creating consumer protection statutes

7   because it would effectively bar any consumer who avoids the offending product from

8   seeking injunctive relief."  Id. at * 6.  See also Ries v. Arizona Beverages USA LLC, 287

9   F.R.D. 523, 533 (N.D. Cal. 2012) ("As plaintiffs further note, were the Court to accept the

10  suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat

11  standing for an injunction, then injunctive relief would never be available in false advertising

12  cases, a wholly unrealistic result."); Larsen v. Trader Joe's Co., 2012 WL 5458396 (N.D. Cal.

13  June 14, 2012) (holding that plaintiffs had standing to seek injunctive relief even though they

14  would not purchase the food items in question again because of their synthetic ingredients).

15       Guided by the Ninth Circuit's interpretation of Article III's standing requirements, this

16  Court agrees with the courts that hold that a plaintiff does not have standing to seek

17  prospective injunctive relief against a manufacturer or seller engaging in false or misleading

18  advertising unless there is a likelihood that the plaintiff would suffer future harm from the

19  defendant's conduct – i.e., the plaintiff is still interested in purchasing the product in

20  question.  Ninth Circuit law makes it clear that the plaintiff himself must demonstrate "a real

21  and immediate threat of repeated injury,"  Bates, 511 F.3d at 985.  The plaintiff must

22  establish "a sufficient likelihood that he will again be wronged in a similar way."  Id.

23       In ADA cases, the Ninth Circuit has held that "Article III . . . requires a sufficient

24  showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive

25  relief will vindicate the rights of the particular plaintiff rather than the rights of third parties."

26  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 949 (9th Cir. 2011).  An ADA plaintiff

27  can show a likelihood of future injury when (1) "he intends to return to a noncompliant

28  accommodation and is therefore likely to reencounter a discriminatory architectural barrier";

or (2) "discriminatory architectural barriers deter him from returning to a noncompliant accommodation." Id. at 950. In both cases, a desire to return to the noncompliant accommodation is necessary. The Ninth Circuit explained:

> An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury. He lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability.

Id. at 953.

If an ADA plaintiff must demonstrate likely injury in the future, consumer plaintiffs such as the one in this case must as well. There is no likelihood of injury in the future if a plaintiff has no interest in purchasing the product at issue again because it does not work or does not perform as advertised.

Although injunctive relief may not be available in federal court in many false advertising cases where the consumer no longer intends to purchase the product in question, it is an exaggeration to claim that injunctive relief would never be available in false advertising cases. There are cases where a consumer would still be interested in purchasing the product if it were labeled properly - for example, if a food item accurately stated its ingredients. Indeed, in Ries, the plaintiffs stated that they intended to purchase the AriZona tea beverage in the future. 287 F.R.D. at 533. In these types of cases that do not involve claims that a product does not work or perform as advertised, injunctive relief may still be available.

At any rate, as important as consumer protection is, it is not within the Court's authority to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws. As Judge Tucker stated in her order in Delarosa, "To the extent that Henderson and other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate." (Order at 10:11-12.)

///

1    Moreover, plaintiffs who have no intention of again purchasing a product that is the

2  focus of false advertising claims are not precluded from seeking an injunctive remedy

3  because they can sue in state court. "In assessing standing, California courts are not bound

4  by the 'case or controversy' requirement of article III of the United States Constitution, but

5  instad are guided by 'prudential' considerations." Bilafer v. Bilafer, 161 Cal. App. 4th 363,

6  370 (2008).  Generally, in order to have standing in California courts, the plaintiff must be

7  able to allege an "invasion of the plaintiff's legally protected rights." Angelucci v. Century

8  Supper Club, 41 Cal. 4th 160, 175 (2007).  "Standing rules for actions based upon statute

9  may vary according to the intent of the Legislature and the purpose of the enactment." Id.

10    Under the UCL, a plaintiff has standing to sue for injunctive relief if the plaintiff "has

11  suffered injury in fact and has lost money or property." Cal. Bus. & Prof. Code § 17204.

12  Similarly, the CLRA provides that any consumer who suffers "any damage" as a result of the

13  challenged practices may seek injunctive relief. Cal. Civ. Code § 1780(a).  When analyzing

14  standing to seek injunctive relief under the UCL and CLRA, the California Supreme Court

15  has been guided by the statutory language and has not imposed additional requirements,

16  such as the need to show future injury. See Clayworth v. Pfizer, 49 Cal. 4th 758, 788-790

17  (2010) (holding that pharmacies established standing to sue for injunctive relief under the

18  UCL because they lost money when they paid for an allegedly illegal overcharge); Meyer v.

19  Sprint Spectrum L.P., 45 Cal. 4th 634, 640-646 (2009) (discussing standing requirements

20  under the CLRA and noting that the statute makes clear that remedying an individual

21  consumer grievance "does not prevent consumers from suing to enjoin unlawful practices

22  on the public's behalf.")

23    In this case, it is apparent that Plaintiff has no intention of buying Defendant's skin tag

24  removal product again in the future.  According to Plaintiff, the product has no efficacy with

25  respect to the removal of skin tags, the reason why Plaintiff bought it in the first place.

26  Therefore, Plaintiff has not established the likelihood of future injury from Defendant's

27  alleged misrepresentations regarding the product and lacks Article III standing to seek

28  injunctive relief.

1     Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiff's claims

2 for injunctive relief under the CLRA, UCL and FAL.  Because injunctive relief is the only relief

3 sought in connection with Plaintiff's CLRA claim (Compl. ¶ 71), the Court dismisses the

4 CLRA claim in its entirety.  The Court does not reach Defendant's argument that the CLRA

5 claim should be dismissed because Plaintiff failed to file the affidavit of proper venue as

6 required by Cal. Civ. Code § 1780(d).[2]

7

8 B.   Implied Warranty Claim and MMWA Claim

9     Defendant moves to dismiss Plaintiff's breach of implied warranty claim and MMWA

10 claim on the ground that Plaintiff failed to provide notice of the alleged breach to Defendant,

11 as required by Cal. Com. Code § 2607(3)(A).  In addition, Defendant contends that Plaintiff

12 has not sufficiently alleged any express written warranty as defined by the MMWA, 15 U.S.C.

13 § 2301(6)(A), (B).

14     The Court declines to dismiss the breach of implied warranty and MMWA claim on

15 the ground of insufficient notice.  In Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57

16 (1963), the California Supreme Court held that it was not appropriate to apply the notice

17 requirement "in actions by injured consumers against manufacturers with whom they have

18 not dealt."  Because the plaintiff, who had been injured by a power tool attachment, did not

19 purchase the product from the manufacturer, the court concluded that the plaintiff was not

20 required to give notice of his breach of express warranty claim to the manufacturer. Id. at.

21 62.

22     In a subsequent case, the California Court of Appeal held that the reasoning of

23 Greenman also applied to a breach of express warranty case that did not involve personal

24 injury. The Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints

25

26     [2] If Plaintiff decides to seek leave to amend his complaint to seek damages under the
CLRA, Plaintiff should keep in mind that district courts within this circuit have dismissed
27 CLRA claims when the plaintiff fails to file the venue affidavit concurrently with the filing of
the complaint.  See Castagnola v. Hewlett-Packard Co., 2012 WL 2159385, at * 10 (N.D.
28 Cal. June 13, 2012); In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV
Television Lit., 758 F. Supp. 2d 1077, 1094  (S.D. Cal. 2010).

1    v. Cavanaugh, 217 Cal. App. 2d 492, 515 (1963) (holding that notice was not required

2    because the plaintiff did not deal directly with the manufacturer of the plastic pipe that was

3    installed by a contractor).  See also Ho v. Toyota Motor Corp., __ F. Supp. 2d __, 2013 WL

4    1087846, at * 6 (N.D. Cal. March 14, 2013) (holding that Greenman does not impose a

5    physical injury requirement on plaintiffs who bring a breach of express warranty claim against

6    a manufacturer for a defective product purchased from a dealer).  Courts have also excused

7    notice of breach of *implied* warranty where the plaintiff did not deal directly with the

8    manufacturer.  See Aaronson v. Vital Pharm., Inc., 2010 WL 625337, at * 5 (S.D. Cal. Feb.

9    17, 2010) (holding that because the plaintiff's breach of implied warranty claim was against

10   Vital Pharm in its capacity as a manufacturer, not as a seller, notice was not required).

11        Because Plaintiff purchased the Naturasil skin tag remover from CVS, not directly

12   from Defendant, Plaintiff was not required to give notice of his breach of implied warranty

13   claim to Defendant.  Therefore, the Court will not dismiss the implied warranty and MMWA

14   claims based on failure to give notice.[3]

15        Defendant concedes that the MMWA provides a federal cause of action for state law

16   implied warranty claims as well as "written warranty" claims as defined by the MMWA.

17   (Reply at 10:2).  Other than arguing that notice was not given, Defendant does not contend

18   that Plaintiff's implied warranty claim fails to state a claim.  Therefore, Defendant's motion

19   to dismiss Plaintiff's implied warranty claim is denied, and Plaintiff's MMWA claim survives

20   as well.  The Court need not determine at this time which, if any, of Defendant's

21   representations meet the MMWA's definition of a "written warranty."  15 U.S.C. § 2301(6).

22

23                        **IV.  CONCLUSION**

24        For the reasons discussed above, Defendant's motion to dismiss is **GRANTED IN**

25   **PART** and **DENIED IN PART**.  Defendant's motion is **GRANTED** as to Plaintiff's claims for

26   injunctive relief and is **DENIED** as to Plaintiff's breach of implied warranty and MMWA

27

28        [3] The Court does not decide whether the CLRA notice letter (Ex. 3 to Compl.), which
     mentions breach of written express warranties, constitutes sufficient notice.

1  claims.  Plaintiff's CLRA claim and claims for injunctive relief under the UCL and FAL are

2  **DISMISSED**.  Defendant shall file an answer to the Complaint within 10 days of the entry of

3  this Order.

4  **IT IS SO ORDERED.**

5  DATED:  May 13, 2013

6  _____
   BARRY TED MOSKOWITZ, Chief Judge

7  United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv3019 BTM(DHB)